UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EXPERIOR GLOBAL WAREHOUSING, LLC and LYNX HOLDINGS, LLC<br><br>Plaintiffs,<br><br>v.<br><br>BTC III HAMILTON DC LLC, ARES MANAGEMENT, LLC, and BLACKCREEK GROUP, LLC,<br><br>Defendants. | Civil Action No. 23-8472 (RK) (JBD)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiffs Experior Global Warehousing, LLC ("Experior") and Lynx Holdings, LLC's ("Lynx") (collectively, "Plaintiffs") motion for a temporary restraining order (ECF No. 3). Plaintiffs seek an order restraining Defendants BTC III Hamilton DC LLC ("BTC"), Ares Management, LLC ("Ares") and Blackcreek Group, LLC ("Blackcreek") (collectively, "Defendants") "from taking any adverse action against Plaintiffs under the provisions of the Lease" agreement between the parties. (ECF No. 3 at 1–2.) The Court has considered the Plaintiffs' submission and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' motion is **DENIED**.

**I.      BACKGROUND**

This action concerns a commercial lease (the "Lease") for the property at 2000 Marketplace Blvd., Hamilton, New Jersey 08691 (the "Property" or the "Facility") entered into by the parties

in February 2023. ("Mot.," ECF No. 3-2 at 2.) Plaintiffs sought to use the subject Property for "the storage, distribution, and sale of materials, goods, products and merchandise made by or distributed by Experior." (*Id.*) The Lease term spans just over five years, running from February 15, 2023 until May 31, 2028. (*Id.*) It provides for an initial security deposit of $1,500,000, followed by monthly rent payments ranging from $302,575.00 up to $368,128.75. (ECF 3-6 at 2.) Under the terms of the Lease, a Letter of Credit ("LOC") could be provided in place of the security deposit.[1] (*Id.* at 33, § 27.1) The Lease specifies that "[u]pon the occurrence of default by Tenant, Landlord may, from time to time, without prejudice to any other remedy, draw on the Letter of Credit to satisfy any arrears of Rent, or to pay any sums owed to Landlord as described in the Lease, or to satisfy any damage, injury, expense or liability caused to Landlord by such default." (*Id.*)

Prior to occupying the premises, Plaintiffs allege they discovered "a sizable puddle of water" during a walk-through of the premises. (Mot. at 2.) Defendants attributed the issue to a broken, but subsequently repaired, sprinkler pipe. (*Id.*) A few months later, on July 14, 2023, Plaintiffs noticed "further water seepage and significant cracking in the concrete floor" of the Property. (*Id.*) Plaintiffs notified Defendants, who upon inspection "recommended that [Plaintiffs] continuously operate the ventilation systems . . . to clear the moisture and circulate the air." (*Id.* at 2–3.) Problems persisted, including cracked and wet ceiling tiles, continued water leakage and a broken fire alarm. (*Id.* at 3.)

Plaintiffs retained Peter Craig, "a concrete floor and moisture consultant," to examine the Property. After his investigation, Mr. Craig "determined that the water seepage was a safety

---

[1] Plaintiffs explain that "[i]n lieu of a cash security deposit, Experior obtained a letter of credit . . . from Huntington Bank. That LOC is secured by equipment which is owned by Experior and used in its business operations." (Compl. ¶ 26, ECF No. 1.)

concern," the "moisture that will continually emit . . . creates a high risk for the development of mold," the "seepage was likely caused by Defendants' failure to place a vapor retarder directly under the concrete floor of the Facility during construction," "the moisture level was essentially 100%" and "the implementation of any vapor retarder . . . would require significant expense." (*Id.* at 4.)

Plaintiffs allege that despite Defendants' promises to the contrary, Plaintiffs never received an "explanation regarding the cause of the water seepage or what actions [Defendants] intend[] to take to remedy the issue to date." (*Id.* at 3.) As a result of the property damage and Defendants' inaction, Plaintiffs have incurred costs to remove their products and have been forced to "vacat[e] the Facility, expect[ing] to be fully vacated on or before August 25, 2023." (Compl. ¶ 24.)

On August 23, 2023, Plaintiffs filed suit, seeking a declaratory judgment that Defendants are in breach of the Lease (Count I), and asserting claims for breach of contract (Count II), constructive eviction (Count III), fraud (Count V), and negligent misrepresentation (Count VI). (*Id.* ¶¶ 29–73.) Plaintiffs also seek an injunction preventing Defendants from taking adverse action against Plaintiffs for, e.g., nonpayment, pursuant to the Lease terms (Count IV). (*Id.*) Concurrently, Plaintiffs filed a motion for a temporary restraining order, asking the Court to "prevent Defendants from taking any adverse action against Plaintiffs under the provisions of the Lease." (Mot. at 9.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a district court may issue a preliminary injunction or a temporary restraining order. Fed. R. Civ. P. 65. These are "'extraordinary remed[ies]' that 'should be granted only in limited circumstances.'" *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, 2022 WL 3536494, at *2 (3d Cir. Aug. 5, 2022) (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). The party seeking the temporary

restraining order must demonstrate the following elements: "(1) the [movant] is likely to succeed on the merits; (2) denial will result in irreparable harm to the [movant]; (3) granting the injunction will not result in irreparable harm to the [non-movant]; and (4) granting the injunction is in the public interest." *Levine v. Fin. Freedom*, No. 18-4127, 2018 WL 4688338, at *2 (D.N.J. Sept. 28, 2018) (citing *Hartmann v. Maybee-Freud*, 279 F. App'x 142, 144 (3d Cir. 2008)). "The 'failure to establish any element . . . renders a [temporary restraining order] inappropriate.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir.1999)).

### III. DISCUSSION

The Court begins and ends its analysis with irreparable harm. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (noting that "irreparable injury must be present . . . and a failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial" of the temporary restraining order (citations and quotation marks omitted)). The movant must make "a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat.'" *Golden Fortune*, 2022 WL 3536494, at *5 (quoting *Acierno v. New Castle Cnty.*, 40 F.3d 645, 655 (3d Cir. 1994)). The "risk of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

An irreparable injury is one "which cannot be redressed by a legal or an equitable remedy following trial." *Air Freight Co.*, 882 F.2d at 801. As such, an injury seeking monetary damages does not qualify as irreparable harm. *See Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate monetary damages belies a claim of irreparable injury."); *Checker Cab of Philadelphia Inc. v. Uber Techs., Inc.*, 643 F. App'x 229, 232 (3d Cir. 2016) ("Accordingly, it is clear that this Court has long held that an injury measured

in solely monetary terms cannot constitute irreparable harm." (citations and quotation marks omitted)).

In a breach of contract action, two instances may give rise to irreparable harm: "(1) where the subject matter of the contract is of such a special nature [or] peculiar value that damages would be inadequate; or (2) where because of some special and practical features of contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *Longo v. Env't Prot. & Improvement Co., Inc.*, No. 16-9114, 2017 WL 2426864, at *10 (D.N.J. June 5, 2017) (citing *McGraw Hill*, 809 F. 2d at 226). These factors are not met where the "damages . . . are capable of being ascertained at a later stage" and "may ultimately make [the party] whole in the event he is awarded damages." *Id.* at *11; *see also Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 178–79 (3d Cir. 2008) (holding that "a plaintiff in a breach of contract case cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from performing contracts with others and that this subsequent failure to perform will harm the plaintiff's reputation"). This is true "even when an action will result in the destruction of a business," so long as the "loss is capable of ascertainment and award at final judgment." *Levine v. BlockFi Inc.*, No. 21-11934, 2021 WL 3508831, at *2 (D.N.J. Aug. 9, 2021) (citations and quotation marks omitted).

In the case at bar, Plaintiffs have failed to demonstrate irreparable harm. Plaintiffs argue that they may "be subject to economic loss and the loss of goodwill" absent the temporary restraining order.[2] (Mot. at 7.) However, Plaintiffs' requested relief does not concern customer

---

[2] Plaintiffs cite to this Court's decision in *Everett Lab'ys, Inc. v. Breckenridge Pharm., Inc.*, for the proposition that there is a "rebuttable presumption of irreparable harm where the plaintiff has made a clear or strong showing of the probability of success on the merits." (Mot. at 7 (citing 573 F. Supp. 2d 855, 865 (D.N.J. 2008), *dismissed*, 363 F. App'x 743 (Fed. Cir. 2009)).) The Court finds *Everett* inapposite here as it referred specifically to the patent context, and even then, the Court discussed that the rebuttable

5

goodwill or the subject Property. Instead, Plaintiffs seek relief "prevent[ing] Defendants from taking adverse action Plaintiffs under the provisions of the Lease, including any action related to the letter of credit required by Section 27.1." (Mot. at 9.) As discussed above, the Lease allows Defendants to draw from the LOC to satisfy any outstanding rent payments in the case of a default. This potential harm is not irreparable. Any amount that Defendants may draw from the LOC is readily quantifiable. Because "money damages" could make Plaintiffs whole in the event of a judgment in their favor, Plaintiffs cannot establish irreparable harm. *See Frank's GMC Truck Ctr.*, 847 F.2d at, 102.

Plaintiffs further fail to show a "special nature" or "peculiar value" regarding the Lease. *See Longo*, 2017 WL 2426864, at *10. The face of the Complaint and motion indicate that this dispute centers on an unfortunate but standard breach of contract. Moreover, Plaintiffs have made no showing of "immediate . . . injury" as required under the law. *Golden Fortune*, 2022 WL 3536494, at *5. At this point, Defendants have not drawn from the LOC, nor have they insinuated that they intend to do so. Plaintiffs' claim is therefore entirely speculative. Finally, while Plaintiffs allege potential "considerable financial harm" and "significant disruption to its business operations," (Mot. at 8.), "the destruction of a business," is not irreparable so long as the damages are quantifiable.³ *BlockFi, Inc.*, 2021 WL 3508831, at *2 (citations and quotation marks omitted); *see also Delco LLC v. Giant of Maryland, LLC*, No. 07-3522, 2007 WL 3307018, at *19 (D.N.J. Nov. 8, 2007) (holding that "anticipated injuries . . . tied exclusively to money, time and

---

presumption may no longer apply in light of subsequent Supreme Court decisions. *Everett*, 573 F. Supp. 2d at 866–68.

³ Plaintiffs alleged damages include increased costs to store their products, potential operational disruptions, and a loss of the LOC. Plaintiffs do not substantiate their claims that they have failed to deliver any orders; rather, the "disruptions" appear to pertain to increased costs in storing and moving their products. Indeed, Plaintiffs appear to have alleviated the risk of harm to their operations, as they "already [have] been forced to remove at least 240 truckloads of product . . . to prevent water damage" and have nearly, if not fully, vacated the Premises. (Mot. at 7.)

energy . . . are precisely the sort of injuries that can be satisfactorily compensated after trial" (citations and quotation marks omitted)).

Accordingly, as Plaintiffs have not demonstrated an irreparable injury, their motion for a temporary restraining order fails.

**CONCLUSION**

For the reasons set forth above, and for good cause shown,

**IT IS** on this 25th day of August, 2023,

**ORDERED** that Plaintiffs' motion for a temporary restraining order (ECF No. 3) is hereby **DENIED**.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**